# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00542-CR

**Franklin Lashawn Williams, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 09-003-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Franklin Lashawn Williams was charged with two counts of aggravated assault on a public servant and one count of evading arrest in a motor vehicle. *See* Tex. Penal Code Ann. §§ 22.02, 38.04 (West Supp. 2010). All three charges arose from a single incident. The State alleged that when police officers attempted to execute an arrest warrant on Williams for aggravated robbery involving the use of a deadly weapon, Williams fled in his car and tried to run down two police officers in the process. A jury convicted Williams on one of the assault counts and on the evading arrest count. On appeal, Williams argues that the trial court erred by admitting testimony regarding the nature of the arrest warrant police were trying to execute. He argues that while the existence of the warrant was relevant to explain why the officers were initially pursuing

him, the fact that the warrant was for aggravated robbery with a deadly weapon was irrelevant and prejudicial.  We hold that Williams waived this argument at trial.  We affirm his conviction.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2008, police officers undertook to execute an arrest warrant on Williams for aggravated robbery involving the use of a handgun.  *See* Tex. Penal Code Ann. § 29.03(a)(2) (West Supp. 2010).  The police learned that Williams was at a particular apartment complex and went to the scene in two cars; officer Jerod Morris drove one, and officer Michael Hallmark drove the other.  As the officers entered the apartment complex's parking lot, they saw Williams getting into his car.  The officers attempted to block Williams's car with their own to prevent Williams from fleeing.  The officers stopped their cars, exited them, and began approaching Williams's car on foot while yelling "Stop!  Police!"  The officers were wearing vests with the word "Sheriff" printed on them.  Williams began driving his car towards Morris, and Morris ducked back inside his car to avoid being struck.  Williams was able to exit the parking lot and began driving away.  The officers followed Williams in their vehicles and engaged in a lengthy pursuit that covered large portions of west and central Georgetown.  At least six police vehicles representing four different agencies participated in the pursuit, during which Williams wove in and out of traffic,

---

[1] After Williams's counsel filed his brief, this Court received from Williams a pro se motion to amend the brief.  In the motion, Williams criticizes counsel's brief and raises additional issues.  However, a criminal defendant has no right to hybrid representation or to represent himself on direct appeal.  *Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004).  Accordingly, the motion has been marked "received not filed," and we will not rule on or address any of the arguments raised in it.  *See id*; *Berry v. State*, 278 S.W.3d 492, 495 (Tex. App.—Austin 2009, pet. ref'd).

disregarded stop signs and traffic signals, drove on the wrong side of the roadway, left the roadway, and came close to striking two of the police vehicles. The pursuit ended only after Williams's vehicle collided with a fence next to a bridge near downtown Georgetown. Williams fled on foot after his vehicle was disabled, and officers eventually apprehended him atop a rock embankment next to the San Gabriel River.

As a result of the incident, the State charged Williams with two counts of aggravated assault on a public servant—one each on Officers Morris and Hallmark—with Williams's car playing the role of deadly weapon. *See* Tex. Penal Code § 22.02. The State also charged Williams with one count of evading arrest in a motor vehicle. *See id*. § 38.04. Williams pleaded not guilty and went to trial.

During its opening statement, the State mentioned that the episode in question took place while police officers were attempting to arrest Williams for aggravated robbery involving a deadly weapon. Williams did not object. The State then called its first witness, Granger Police Chief David Mace, who had joined in the vehicular pursuit of Williams. The following exchange occurred:

> PROSECUTOR: Chief, I'm going to direct your attention to an investigation that you were conducting back in December of 2008 involving the defendant, Franklin Lashawn Williams.
>
> MACE: Yes.
>
> PROSECUTOR: Okay. What was the investigation, just the offense that you were looking at?
>
> MACE: I was looking at aggravated robbery.

PROSECUTOR: And aggravated because of what kind of—what made it aggravated?

DEFENSE: Judge, I'm going to object to the relevance of the question. I think the State's entitled to question whether there was an active warrant, but I don't believe there's any relevance in what these other unproven allegations are.

PROSECUTOR: I'll rephrase, Your Honor.

THE COURT: Thank you.

PROSECUTOR: You had indicated there was an aggravated robbery. I guess the only thing I'm asking is what is an aggravated robbery versus a robbery. What was the aggravating circumstance?

DEFENSE: Judge, again, I'm going to object to the relevance. The only thing the jury needs to know is there was a valid warrant, that's the reason why the person's being arrested.

PROSECUTOR: Judge, I think, to show why the officer took the steps that he did, not only was there an active warrant for an aggravated robbery, but the danger that was involved in that particular type of warrant, and that's what I'm seeking to elicit.

THE COURT: I'll overrule the objection. I'll permit you, based on that connection.

PROSECUTOR: Just what was the weapon?

MACE: The weapon was a handgun.

Later, the State called Officer Morris to the stand. Officer Morris stated that he first became involved in this case when he learned that the Granger Police Department "had a warrant for Aggravated Robbery with a Firearm on a subject by the name of Franklin Williams." Williams did not object to this statement. Morris then discussed how he and his fellow officers had formulated a strategy for arresting Williams away from his home, hopefully thereby denying him access to the firearm that he had allegedly used in the crime for which they were going arrest him. The prosecutor

4

asked Morris to verify that the crime was aggravated robbery, and Morris did so. Williams's attorney objected, stating, "Judge, again, I'm going to object to the side bar. We've gone over that. If they want to tell the jury he was charged with aggravated robbery, I think this is the 11th time they've done it. I object to that because it's not relevant." The judge overruled the objection on the basis that the nature of Williams's offense was relevant to explaining the officers' approach to arresting Williams.

The State then called Officer Marc Vivas, who had ridden along with Officer Morris on the day in question. Vivas testified that before riding along with Officer Morris he learned "that [Williams] was wanted for an aggravated robbery with a weapon." Williams did not object to this statement. Finally, during closing argument, the prosecutor again stated that Williams "had a felony arrest warrant for aggravated assault with a deadly weapon." Williams did not object.

The jury found Williams guilty of evading arrest and of aggravated assault on Officer Morris. It found Williams not guilty of aggravated assault on Officer Hallmark. Williams appeals.

## STANDARD OF REVIEW

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

## DISCUSSION

Williams raises a single point of error: "The trial court reversibly erred by admitting, over appellant's timely objection, evidence that the arrest warrant the police were attempting to serve on appellant was for an aggravated robbery offense that involved the use of a handgun." Williams

bases this argument solely on the above-quoted exchange involving Chief Mace's testimony. Williams argues that Mace's testimony was irrelevant under rule of evidence 401, and therefore should not have been admitted under rule of evidence 402, because the nature of Williams's arrest warrant was irrelevant to whether Williams committed the offenses alleged in this case.[2]

We hold that Williams waived this argument because he did not object every time the nature of his arrest warrant came into evidence. "'[T]o preserve error in admitting evidence, a party must . . . object each time the inadmissible evidence is offered or obtain a running objection. An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.'" *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). While Williams objected to Officer Mace's testimony about the nature of his arrest warrant, he objected inconsistently to the same testimony from Officer Morris and did not object at all to the same testimony from Officer Vivas.

Even if Williams had not waived his objection, any error in admitting the officers' testimony would be harmless. *See* Tex. R. App. P. 44.2(b) (non-constitutional error that does not affect substantial rights must be disregarded); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (Rule 44.2(b) harm standard is whether erroneous admission of evidence "had a substantial and injurious effect or influence in determining the jury's verdict."). First, the State presented strong evidence of Williams's guilt: the jury saw video recordings of the pursuit of Williams, and officers

---

[2] The State argues that the nature of the arrest warrant was relevant to show Williams's motive and intent in evading arrest and assaulting the pursuing officers. It also argues that the nature of the arrest warrant was relevant to explain the officers' approach towards arresting and pursuing Williams.

Morris and Vivas both testified that Williams drove his car at Morris after Morris identified himself as a police officer. Second, the jury charge instructed the jury that it could consider the nature of Williams's arrest warrant only insofar as it illuminated Williams's motive and intent in committing the charged offenses. *See Williams v. State*, 273 S.W.3d 200, 227 n.101 (Tex. Crim. App. 2008) (limiting instruction can mitigate harm caused by improper admission of evidence).

For the reasons stated above, we overrule Williams's issue and affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   February 25, 2011

Do Not Publish